Filed 4/14/15  In re R.W. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re R.W. et al., Persons Coming Under the Juvenile Court Law. | C076100 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.W. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. JD232886, JD234016) |

Appellants E.C. (mother) and J.W. (father) appeal from the orders of the juvenile court denying their requests to have minors R.W. and J.W. placed with their half brother, Omar.  Mother had filed a petition for modification (Welf. & Inst. Code, § 388; unless otherwise stated, statutory section references that follow are to the Welfare and Institutions Code) seeking to have minor R.W. placed with Omar.  The parents also

1

sought to have minor J.W. placed with Omar at a relative placement hearing, (§ 361.3) which hearing coincided with the hearing on mother's petition for modification. The juvenile court denied mother's petition for modification, assessed the relative placement issue for J.W., and denied the request to place with Omar.

Both parents purport to appeal from both orders. We will dismiss the appeal as to R.W. and affirm the juvenile court's orders as to J.W.

FACTS AND PROCEEDINGS

On December 5, 2012, Sacramento County Department of Health and Human Services (the Department) detained minor R.W. (then seven months old) due to her parents' drug abuse and history of domestic violence. The parents said they did not have any relatives they wanted assessed for placement and no relatives came forward seeking placement. R.W. was adjudged a dependent and placed with foster parents.

In April 2013, the Department reported that it was considering a family friend, Elizabeth, for placement of R.W. However, she was not yet ready to take placement so no further action was taken at that time.

On May 15, 2013, the paternal grandmother contacted the Department and expressed an interest in placement. The Department did not pursue placement with the paternal grandmother because, (1) R.W. was by then in a foster/adoptive placement, and (2) the parents were seeking to live with the paternal grandmother so her home would not be approved for placement.

On June 5, 2013, the foster parents who had been caring for R.W. since January 18, 2013, filed a request for de facto parent status. They also indicated they wanted to pursue adoption should reunification efforts fail. R.W. was very bonded to them and appeared comfortable in their home. The juvenile court granted their request for de facto parent status.

2

In October 2013, R.W.'s 19-year-old half sibling, Omar, contacted the Department and requested that R.W. be placed with him. The Department made a kinship referral and began assisting with visits between R.W. and Omar. The Department also sought waivers for criminal convictions for domestic violence for Omar's father, who resided with Omar.

On November 5, 2013, J.W. was born to the parents. J.W. tested positive for methamphetamine at birth and mother admitted to using methamphetamine in the days prior to J.W.'s birth. Hospital employees reported that father smelled strongly of marijuana and was stumbling and unsteady while holding J.W. Two days later, J.W. was placed with R.W.'s foster/de facto parents.

On February 7, 2014, J.W. was adjudged a dependent and ordered into out-of-home placement. Parents were ordered to receive reunification services as to J.W., but their services as to R.W. were terminated.

The kinship approval for Omar's home was still pending. The psycho-social assessment indicated that Omar did not support reunification with the parents. It also indicated that Omar would not be able to provide appropriate care and supervision without the total support of his father and stepmother. His father and stepmother had expressed a willingness to help and provide care for R.W. and J.W.

Omar's home was approved by kinship on January 30, 2014. In an addendum for a March 7, 2014, relative placement hearing, the Department recommended placement of both R.W. and J.W. with Omar. Mother also filed a section 388 petition for modification requesting R.W.'s placement be changed to placement with Omar, which was opposed by R.W.'s counsel.

On March 11 and 12, 2014, the juvenile court heard testimony and argument regarding mother's section 388 petition for modification and relative placement for J.W. The juvenile court denied mother's petition, finding it was not in R.W.'s best interests to

3

be moved to placement with Omar. The court also denied a request that J.W. be placed with Omar.

DISCUSSION

I

*R.W.*

Both parents purport to appeal from the juvenile court's denial of mother's petition for modification seeking to have R.W. placed with Omar. (Sacramento County case No. JD232886.) The Department contends neither parent has standing to raise the issue on appeal. We need not reach the disputed standing issue, however, because the appeal is moot as to R.W.

We take judicial notice of the record on appeal in case No. C077003. (Evid. Code, §§ 452, 459.) We note that a reviewing court normally should give the parties to an appeal an opportunity to comment on the propriety of judicial notice and the tenor of the matter to be noticed on the reviewing court's own motion, if the matter is of substantial consequence to the appellate opinion. (Evid. Code, § 452, subd. (d) [judicial notice of court records], § 459 [reviewing court may take judicial notice but must give parties opportunity to comment under § 455 if the matter is of substantial consequence].) The validity of taking judicial notice of our record on appeal in case No. C077003 appears self-evident. However, if the parties are aggrieved by this judicial notice, we will entertain a motion for rehearing in order to give them an opportunity to address the matter before the decision becomes final. (Evid. Code, § 459(d).)

The record in case No. C077003 reflects that parental rights were terminated as to minor R.W. and that, thereafter, an appeal was filed but dismissed on November 17, 2014, for failure to file an opening brief. Remittitur issued on January 23, 2015. Accordingly, the termination of parental rights as to minor R.W. is now final.

4

"It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.) When subsequent events render it impossible for this court, if it should decide the case in favor of appellant, to grant any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. (*Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863.)

In this appeal, parents request that we reverse the order denying mother's modification petition, which requested the juvenile court place R.W. in the home with Omar. Parents, however, abandoned their appeal from the order terminating parental rights, and that order is now final and cannot be vacated. (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) Once parental rights are terminated, the "exclusive care and control of the child" is placed with the Department for adoptive placement. (§ 366.26, subd. (j).) Accordingly, we cannot provide any meaningful relief because R.W.'s prospective adoptive family now has statutory preference for adoption, and the juvenile court's role is limited to reviewing the Department's adoptive placement decision for abuse of discretion. (§ 366.26, subd. (k); see *In re Sarah S.* (1996) 43 Cal.App.4th 274, 285-286.) Parents' claim is, therefore, moot. (*In re Jessica K., supra*, at p. 1315.)

II

*J.W.*

Parents also contend the juvenile court abused its discretion in denying Omar placement of J.W. pursuant to section 361.3. (Sacramento County case No. JD234016.)

Estoppel

Initially, we address parents' argument that the Department is estopped on appeal from asserting the position that there was no juvenile court error in denying placement

5

with Omar because that position is contrary to the position it asserted in the juvenile court at the section 361.3 hearing.

It has been held that " ' "[a]lthough equitable estoppel may apply to government actions where justice and right so require, 'estoppel will not be applied against the government if the result would be to nullify a strong rule of policy adopted for the benefit of the public [citations] or to contravene directly any statutory or constitutional limitations. [Citation.]' [Citations.]" ' [Citation.] The public policy here is the protection of abused and neglected children (§ 300.2) and the children's need for stability and permanence [citation]." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 197.) The juvenile court's order furthers these policies and we see no reason why the policy preventing the application of equitable estoppel to the Department under such circumstances would not apply equally to judicial estoppel.

Furthermore, setting aside the question of whether the doctrine of judicial estoppel may be applied against the Department in a dependency hearing, where the focus is on the protection and best interests of the child, one of the requirements for the application of judicial estoppel is clearly not met here. Judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) *the party was successful in asserting the first position* (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citations.]" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183, italics added.) The third judicial estoppel factor of success is not satisfied here, as the juvenile court's order was contrary to the Department's recommendation of placement with Omar. (See *Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170-171 ["[t]he factor of success—whether the court in the earlier litigation adopted or accepted the prior position as true—is of particular importance"].) Thus, the Department is not estopped from asserting the position that there was no juvenile court error on appeal.

Finally, we point out that parents, as appellants, have the burden of establishing juvenile court error, regardless of the Department's position on appeal. Error is not presumed. The judgment or order of the lower court is presumed correct and it is incumbent on parents, as the *appellants*, to *affirmatively* establish error. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) Thus, the doctrine of judicial estoppel, even if applied to the Department's position on appeal, would be of no substantive consequence.

Application of Section 361.3

"When a child is removed from his or her parents' custody under section 361, the juvenile court places the care, custody, control, and conduct of the child under the social worker's supervision. (§ 361.2, subd. (e).) The social worker may place the child in several locations, including the approved home of a relative. (§ 361.2, subd. (e)(1)-(8).) Relatives who request placement of a dependent child are given preferential consideration. (§ 361.3, subd. (a).) In determining whether to place the child with the requesting relative, the court and social worker consider the factors enumerated in section 361.3, subdivision (a). The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor. (*In re Stephanie M.* (1994) 7 Cal.4th 295 [].)" (*Alicia B. v. Superior Court of San Diego County* (2004) 116 Cal.App.4th 856, 862-63, footnote omitted (*Alicia B.*).)

Parents argue the juvenile court misapplied section 361.3 by failing to give placement preference with Omar, as a relative caregiver. In making this argument, however, father appears to rely on the false premise that the juvenile court gave placement preference to the minor sibling, R.W., and then argues that only *adult* siblings have placement preference. (See § 361.3, subd. (c)(2) ["the following relatives shall be given preferential consideration for the placement of the child: an adult who is a grandparent, aunt, uncle, or sibling"].) The juvenile court did not, of course, place J.W.

with R.W. -- it placed J.W. with R.W.'s caretakers. Thus, the juvenile court did not misapply section 361.3 by giving placement preference to a minor sibling.

Father also repeatedly asserts that "[t]he juvenile court's decision to overrule the [Department's] exercise of its placement discretion, and substitute its own discretion in place of the social agency's expertise, . . ., constituted an abuse of discretion." His assertion is meritless. It is well-established that section 361.3 requires the juvenile court's independent judgment. "When section 361.3 applies to a relative placement request, the juvenile court must exercise its independent judgment rather than merely review [the Department's] placement decision for an abuse of discretion. The statute itself directs both the 'county social worker and court' to consider the propriety of relative placement. (§ 361.3, subd. (a).) The cases, too, discuss the relative placement preference in the context of an independent determination by the juvenile court. 'The statute expresse[s] a command that relatives be assessed and considered favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child.' (*In re Stephanie M.[, supra,]* 7 Cal.4th [at p.] 320, [] italics omitted.)" (*Cesar v. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033.)

The remainder of parents' contentions regarding the juvenile court's application of section 361.3 are, in substance, contentions that the court abused its discretion.

Abuse of Discretion

"We review a juvenile court[']s custody placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. [Citations.] 'Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' [Citations.]" [Citation.]' [Citation.]" (*Alicia B., supra*, 116 Cal.App.4th at p. 863.)

8

The preferential consideration under section 361.3 " 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' (*In re Sarah S., supra*, 43 Cal.App.4th at p. 286[].)  In other words, when a child is taken from his parents' care and requires placement outside the home, section 361.3 assures an interested relative that his or her application for placement will be considered before a stranger's request.  ([*Id.* at p. 285]; see also § 361.3, subd. (c), which states: 'For purposes of this section . . .  [¶]  . . . "[p]referential consideration" means that the relative seeking placement shall be the first placement to be considered and investigated.')" (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 863.)

The juvenile court, however, must still consider the suitability of the relative's home and the best interests of the minor.  The factors the court is to use in making the determination are:  "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.  [¶]  (2) The wishes of the parent, the relative, and child, if appropriate.  [¶]  (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement.  [¶]  (4) Placement of siblings and half siblings in the same home, unless that placement is found to be contrary to the safety and well-being of any of the siblings as provided in Section 16002.  [¶]  (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect.  [¶]  (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for . . . the child . . . .  [¶]  (7) The ability of the relative to do the following:  [¶]  (A) Provide a safe, secure, and stable environment for the child.  [¶]  (B) Exercise proper and effective care and control of the child.  [¶]  (C) Provide a home and the necessities of life for the child.  [¶]  (D) Protect the child from his or her parents.  [¶]  (E) Facilitate court-ordered reunification efforts with the parents.  [¶]

9

(F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe child care, as necessary. [¶] (8) The safety of the relative's home . . . ." (§ 361.3, subd. (a).)

Here, the juvenile court expressly considered the factors set forth in section 361.3, subdivision (a), and determined placement with Omar was not in J.W.'s best interests. First, the juvenile court noted that J.W. had been living with her foster parents since birth -- four months. Removing her from the only home she has known would likely result in some negative impact. With regard to the second factor in section 361.3, subdivision (a), although the parents were clear that they wanted J.W. placed with Omar, they were also clear they wanted J.W. placed with R.W. Since R.W. would not be placed with Omar, it was unclear to the court what the parents' wishes would be since they were not approached about the current contingency. The court noted that the third factor expressed the public policy favoring placement with relatives and further noted that Omar intended to share their family rituals and culture, as well as familial relationships with J.W.

The juvenile court placed significant emphasis on the fourth factor, finding that J.W.'s placement in the same home as her sister, R.W. with whom she was close in age, would provide J.W. an opportunity to enjoy the "closeness, friendship and love that sisters can have." This factor alone weighed heavily in favor of placing J.W. in R.W.'s home and weighed heavily against placement with Omar. The court found the ability to continue to form that bond with her sister was in J.W.'s interest and that her sibling bond with R.W. would be more of a close sibling-type bond than the type of bond she would likely develop with her adult half sibling who would be responsible for parenting her.

We should note that we reject mother's assertion that the juvenile court *could* have also placed R.W. with Omar in order to keep the siblings together. The juvenile court had already found that placement of R.W. with Omar was not in R.W.'s best interests and ordered R.W. was to remain with her caretakers, the de facto mother and father. Parents

10

are essentially suggesting the juvenile court should have entered orders *against* R.W.'s best interests in order to effectuate placement of J.W. with Omar. This, of course, would be contrary to the juvenile court's duties. And, in any event, the propriety of the court's decision regarding placement of R.W. is not before us. (See Discussion, *supra*.)

In any event, the court recognized that there was no question that Omar and his parents had good moral character. They had had four supervised visits with J.W. and three unsupervised overnight visits. The visits were significant but J.W. was forming deep attachments with her foster parents. And while Omar wanted to care for J.W., and the court found he could do so with his parents' assistance, it was unknown whether he could provide legal permanency if reunification was unsuccessful because the Department could not say whether he would qualify to adopt J.W.

The court also found that, with respect to the seventh factor in section 361.3, subdivision (a), Omar did not favor reunification with the parents and, more importantly, lived two hours away from J.W.'s parents. In addition to this physical distance from J.W.'s parents, Omar was a full-time student and had a job, and both of his parents worked. Thus, Omar's ability to facilitate visitation and reunification was problematic even though Omar's parents apparently agreed to take J.W. to visit with her parents twice a week.

Considering these factors, on balance, the juvenile court concluded that placement with Omar was not in J.W.'s best interests.

Omar was assessed and considered by the court as a possible placement for J.W. Placement with Omar, however, would have made reunification and regular visitation difficult, which was the goal for parents at that time. It would also have required J.W. being removed from her close-in-age sister, and the foster parents with whom she had been living since birth. Finally, if reunification failed, it was uncertain whether Omar could provide permanency for J.W. or whether the young minor would need to be moved yet again. Under these circumstances, the juvenile court's determination, considering the

11

statutory factors, that such a placement was not in J.W.'s best interests, was not an abuse of discretion.

DISPOSITION

The appeal is dismissed as to minor R.W. (Sacramento County case No. JD232886.) The orders of the juvenile court are affirmed as to minor J.W. (Sacramento County case No. JD234016.)


                                                            HULL          , Acting P. J.


We concur:


    BUTZ          , J.


    HOCH          , J.