Filed 7/24/15  Jogani v. Jogani CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHASHIKANT JOGANI, | B257750 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC290553) |
| v. | |
| HARESH JOGANI et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles, Rolf M. Treu, Judge. Reversed in part with directions; dismissed in part.

Keller Rackaukas, Jennifer L. Keller, Yen-Shyang Tseng for Defendants and Appellants.

Reed Smith, Margaret M. Grignon, Paula M. Mitchell for Plaintiff and Respondent.

————————————

This represents the fifth in a long series of appellant examinations of issues arising from disputed real estate interests between plaintiff Shashikant Jogani and his four brothers.[1] Jogani alleged that he and his brothers entered into an oral partnership agreement under which the brothers would provide capital to purchase real property that he would identify, acquire and manage, and that he would receive a 50 percent share of the properties' equity after the brothers had recouped their investment plus a percentage. When after seven years of successful operations his brothers had fully recouped their investment and agreed return but refused to pay him half the enterprise profits and denied that any partnership existed, Jogani sued his brothers and their real estate holding companies, alleging fraud, breach of contract, and quantum meruit, seeking approximately $250 million.

As the matter neared trial (not for the first time), the defendants renewed their earlier efforts to disqualify the participation on Jogani's behalf of a transactional attorney who had been involved in the property transactions of the alleged partnership during the approximately seven years from its inception until its collapse. The attorney had represented and negotiated with third parties on behalf of the plaintiff, his brother, and the holding-company entities; he had acted as negotiator and real estate broker with respect to their real estate transactions; and after the dispute arose with respect to the partnership's existence, he continued to represent Jogani, including assisting Jogani and his trial counsel with their prosecution of this lawsuit. The defendants sought orders disqualifying the attorney from continuing to represent Jogani, from assisting him and his trial attorney in this lawsuit, and from appearing as a witness on his behalf at trial.

The trial court denied the requested relief, instead accepting the attorney's offer to end his consultations with the plaintiff and his trial counsel about the lawsuit, if the court would make no findings adverse to him—apparently meaning, no findings that his

---

[1] Because the litigation involves five brothers and other relatives who share the same surname, we refer to plaintiff and respondent Shashikant Jogani (often called "Shashi") as "Jogani"; intending no disrespect, we identify other Jogani family members, when necessary, by their given names.

2

disqualification was required by a conflict of interest or breach of his duties to each of the brothers, his client and his former client. This appeal challenges the court's denial of the requested relief.

## Background[2]

### A. The Complaint.

Jogani alleges in his second amended complaint, filed in November 2003, that in 1979 he began investing in residential apartment properties in and around Los Angeles County. During the following 10 years he acquired approximately 6,500 residential apartment units, having a fair market value of about $375 million and a net equity of $100 million. But his fortunes reversed when the nationwide recession in real estate values, exacerbated by other factors including the Northridge earthquake, caused him to face defaults, foreclosures, and lawsuits.

In 1995, Jogani and two of his four brothers, Haresh and Rajesh, acting both for themselves and as agents for the two other brothers, Chetan and Sailesh, negotiated and entered into an oral general partnership agreement. Under their agreement, Jogani would transfer his interests in his troubled residential apartment properties for the partnership's benefit, he would identify and acquire new properties on behalf of the partnership, and he would manage the partnership's portfolio. He also transferred a number of valuable life insurance policies, his residence, his interests in certain securities, and the use of his time and energies, his employees, and his offices for the partnership's benefit. The brothers would provide capital to acquire the properties from Jogani, and to fund the acquisition of additional properties for the partnership portfolio. Jogani would be paid minimal

---

[2] Our statement of the factual and procedural background for this appeal is taken largely from relevant portions of various published and unpublished opinions of this court in previous appellate proceedings arising from the parties' lawsuit. (See *Jogani v. Jogani* (2006) 141 Cal.App.4th 158 (*Jogani I*); *Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 904 (*Jogani II*); *Jogani v. Superior Court* (July 28, 2010, B224398 [nonpub. opn.]) (*Jogani III*); *Jogani v. Jogani* (Dec. 5, 2012, B222561 consol. with B228875 [nonpub. opn.]) (*Jogani IV*).)

3

compensation; his brothers would have first call on all proceeds of the operation until their principal investment was repaid, plus a 12 percent per year return.[3] At that point Jogani would become entitled to a "contingent promotional interest" consisting of half of all profits, proceeds, and value of the partnership portfolio.

During the next approximately six or seven years the enterprise thrived. By mid-2001 the holding companies had acquired title to hundreds of apartment buildings, owning about 15,900 apartment units with a value in excess of $1 billion and net equity of around $550 million. By about November 2001, the brothers had been repaid about $70 million, representing their entire principal investment, plus the agreed interest on investment and about $4 million for taxes. Jogani claims that his contingent promotional interest in the partnership assets—then allegedly worth more than $250 million— "became fully earned, vested, and due."

According to Jogani's pleading, Haresh, agreed in late 2001 to a $4.8 million distribution of partnership proceeds, one half to Jogani and the other half to Haresh and the other brothers. Nevertheless, in about June 2002, Haresh (acting for himself and the other brothers) removed Jogani from management of the partnership portfolio, recharacterized the earlier $2.4 million distribution to Jogani as a loan, demanding its repayment, withdrew some $15 million in purported fees for himself and the other brothers, without accounting to Jogani, and refused to honor Jogani's vested interest in the partnership and its properties.

In February 2003, Jogani filed this action against his brothers, the holding companies, and various other family members, and filed a second amended complaint in November 2003. After an unsuccessful challenge to the pleadings, the defendants answered with a general denial. (*Jogani I*, *supra*, 141 Cal.App.4th at p. 167.) (Only Haresh, Pinkal (a nephew of Jogani) and the holding companies appeared.) Haresh and

---

[3] According to the pleading, the partnership would use Jogani's redemption rights for it (or various holding companies, nominally owned by Haresh or other family members) to acquire his troubled properties at discounts, either at or in lieu of foreclosure, thereby restoring the previously troubled properties to a positive cash flow.

4

certain of the holding company entities cross-complained against Jogani, alleging mismanagement. (*Ibid.*)

Jogani's pleading alleges causes of action for breach of contract, breach of fiduciary duty, fraud, conspiracy to commit fraud (against Pinkal only), dissolution of partnership, quantum meruit, unjust enrichment, and constructive trust. He sought at least $250 million in damages, dissolution of the partnership, an accounting, injunctive relief, institution of a constructive trust, and appointment of a receiver to manage the partnership portfolio. The individual defendants other than Haresh and Pinkal were dismissed from the action in July 2004 and February 2005, and summary adjudication in Pinkal's favor was affirmed in December 2012. (*Jogani IV*, *supra*, B222561.)

**B.     The 2004 Summary Judgment Motion, the Motion to Disqualify Attorney Steven Glass, and the *Jogani I* Appeal.**

In June 2004, the defendants moved for summary judgment. The motion contended that the oral partnership alleged by Jogani was illegal and unenforceable as a matter of law because its intention was to defraud creditors; and that Jogani's lawsuit was barred by judicial estoppel, because he had repeatedly denied to prospective lenders and judgment creditors that he owned any interest at all in the holding company assets or in any companies owned directly or indirectly by Haresh. (*Jogani I*, *supra*, 141 Cal.App.4th at pp. 166-167.)

On July 30, 2004, while the summary judgment motion was pending and after a June 2004 deposition of attorney Steven Glass, a transactional attorney who had assisted throughout Jogani's efforts to build the real estate enterprise, the defendants moved for Glass's disqualification.[4] The disqualification motion sought two rulings: that Glass is disqualified from acting as counsel for Jogani in this matter; and that Glass is disqualified from testifying on Jogani's behalf as a percipient witness at trial. The defendants

---

[4] Glass had appeared as Jogani's attorney at Jogani's first deposition, and had testified at his own deposition in 2004 that he had represented Jogani in connection with the lawsuit since it was filed. At his own deposition Glass also followed plaintiffs' counsel's instructions not to answer certain questions on attorney-client-privilege grounds.

5

contended that Glass's representation of Jogani, and his assistance to Jogani and his trial attorney in his suit against Haresh and the other defendants, violated the duties of loyalty and confidentiality he owed to Haresh and to the holding companies, who had also been his clients.

In September 2004, the trial granted the summary judgment motion, and denied Jogani leave to further amend the complaint. The defendants dismissed their cross-complaint. (*Jogani I*, *supra*, 141 Cal.App.4th at p. 168.) The motion to disqualify Glass and a pending discovery motion were taken off calendar as moot.

Jogani successfully appealed from the resulting judgment. (*Jogani I*, *supra*, 141 Cal.App.4th at p. 189.) This court held that Jogani's lawsuit was not necessarily barred by the doctrine of judicial estoppel, because judicial estoppel does not necessarily prevent a party from making inconsistent statements under oath; it is established only when the party "'took a contrary position under oath in a prior proceeding *and* . . . the prior position *was accepted by the court*." (*Id.* at p. 176, original italics.) Because Jogani's denials (though deliberate) were not shown to have been submitted to or accepted by a court in rendering a decision on a contested matter, the defendants had failed to show that Jogani's prior position "was accepted by the court"—a prerequisite to judicial estoppel.

## C.    The 2007 Summary Adjudication and the *Jogani II* Appeal.

The defendants again moved for summary judgment, on different grounds. On December 3, 2007, the trial court granted summary adjudication in defendants' favor on all of Jogani's claims except quantum meruit and unjust enrichment. (*Jogani II*, *supra*, 165 Cal.App.4th at p. 904.) After the trial court struck Jogani's request for jury trial, Jogani petitioned this court for a writ of mandate. We granted the requested relief, holding that quantum meruit (the only unresolved cause of action of the second amended complaint) is a legal claim for which Jogani is entitled to a jury trial. (*Id.* at pp. 903-904, 912.)

## D.    Trial on the Quantum Meruit Claim and the *Jogani IV* Reversal.

In the trial of the quantum meruit claim, the jury returned special verdicts in Jogani's favor and against various of the defendants, totaling $65,618,000. The trial

court granted the losing defendants' motion for new trial, finding the jury had committed misconduct by considering matters outside the evidence; Jogani appealed from the new trial order, and from orders and instructions that had limited the trial's scope and excluded evidence (including a summary adjudication eliminating causes of action based on Jogani's alleged partnership). The defendants also appealed, claiming error in the denial of their post-trial motion for judgment notwithstanding the verdicts. (*Jogani III*, *supra*, B224398.)[5]

This court reversed the judgment. In the defendants' favor we held that the trial court was within its discretion in ordering a new trial on the ground that jury misconduct had materially affected the defendants' substantial rights. However, in Jogani's favor we held that the court had improperly limited the trial by summarily adjudicating Jogani's claims for breach of contract, breach of fiduciary duty, fraud, and dissolution of partnership. (*Jogani IV*, *supra*, B222561.)

## E. The Second Motion to Disqualify Glass as Counsel For Jogani, and to Preclude Attorney Glass's Participation as a Witness at Trial.

On February 5, 2014, the defendants' attorneys received a written communication from Jogani's attorney of record stating that attorney Glass "has been advising Mr. Shashi Jogani on this matter,"[6] that Jogani's attorney intends "to utilize his skill and knowledge in preparing for and trying this case," and that "[t]herefore, he will also have access to the documents which are the subject of the protective order," the terms of which the parties were then negotiating. The letter asked if Glass could be exempted from the proposed protective order's terms, or "if you will require us to associate Attorney Glass onto the case . . . ."

According to the defendants' trial counsel, although they knew that Glass had previously represented both Jogani and the defendants in "transactions and related

---

[5] This court granted a peremptory writ of mandate ordering the trial court to enter a final appealable judgment. (*Jogani III*, *supra*, B224398.)

[6] Respondent Jogani's common nickname is "Shashi." (See fn. 1, *ante*.)

7

matters" connected with this case, until receiving the February 5 communication they were unaware that he continued to be assisting Jogani with his lawsuit. Defendants' counsel immediately demanded of Glass that he "cease representing Shashi in this case and refrain from communicating with Shashi or his attorneys about our clients or any aspect of this litigation." A response from Jogani's trial counsel suggested that "for the time being, our side does not designate Mr. Glass as trial counsel . . . ."

On February 18, 2014, the defendants moved to disqualify Glass. Their motion sought to disqualify Glass from acting as counsel for Jogani in this matter; to prohibit Glass from communicating with Jogani and his trial counsel, directly or indirectly, about the case; and to prohibit Glass from testifying as a percipient witness at the trial. The motion was supported by evidence—and Glass's admission—of his current assistance to Jogani and his attorneys in preparing the case against the defendants for trial. And it included deposition excerpts and exhibits in which Glass had confirmed that he had represented both Jogani and some or all of the defendants in numerous transactions from 1995 until mid-2002—transactions that Jogani's lawsuit contends were done nominally on Haresh's behalf, but were actually done for the benefit of the partnership that is at the center of the parties' dispute.[7]

Glass admitted had that in late 2001 he became aware of a clear adversity and conflict of interest between Jogani and the defendants, which he had initially attempted to mediate. When he learned of his clients' conflict of interest with respect to the business he did not resign from his representation of both clients, but over a period of time he resigned from his representation of the defendants. He confirmed that he had shared information with Jogani's trial counsel that he had gained in connection with his representation of the defendant corporations.

---

[7] Glass had testified at his deposition that Haresh was the nominal owner of the defendant holding companies, and that both he and Haresh had repeatedly advised lenders, judgment creditors, and others that Jogani owned no interest at all in the holding companies or the properties they held. Glass had testified that until late 2001 he saw no conflict of interest in his representation of both Jogani and the defendants, and he did not advise either Haresh or Jogani on that subject.

The defendants argued that Glass's representation of both Jogani and the defendants during the years that Jogani had managed the enterprise, without obtaining waivers, breached his fiduciary duties of loyalty and confidentiality to his clients; that his continuing representation of and assistance to Jogani in this lawsuit constitutes a continuing conflict of interest; and that he should not be permitted to testify at trial on Jogani's behalf.[8] (Jogani and Glass had opposed the request for an order precluding Glass from testifying on Jogani's behalf, but only Glass filed opposition to the requests for Glass's disqualification from appearing as Jogani's counsel and prohibiting him from communicating with Jogani or his counsel about the case.)

Glass's opposition to his disqualification and preclusion from communicating with Jogani and his attorneys offered a compromise: He would agree not to advise or communicate with Jogani or his trial attorney in connection with the preparation or trial—but only on the condition that the court would make no factual or legal findings adverse to him.

The trial court denied the disqualification motion after hearing brief argument. It explained that it "accepts Mr. Glass' offer to refrain from acting as counsel or communicating with Plaintiff or Plaintiff's counsel in connection with the litigation of this action."[9] The court also denied the defendants' motion to preclude Glass from testifying on Jogani's behalf (without prejudice to evidentiary objections that might be raised during his testimony), citing the absence of authority for such a ruling.[10]

---

[8] Based on their motion the defendants obtained an ex parte temporary restraining order, barring Glass from communicating with Jogani or his counsel of record about any issue relating to the case.

[9] Glass was separately represented at the hearing.

[10] The court also denied the defendants' summary adjudication motion, which had contended that the alleged partnership agreement on which Jogani's claims are based (except his quantum meruit claim) is illegal and therefore unenforceable. This court summarily denied the defendant's petition for writ of mandate to set aside the summary adjudication denial. (*Jogani v. Superior Court* (Aug. 13, 2014, B257752).)

9

**F.      The Appeal and Motion to Dismiss the Appeal.**

The defendants appealed from the court's denial of the disqualification motion on July 24, 2014.[11]  Jogani moved to dismiss the appeal, arguing primarily that the defendants are not aggrieved by the challenged ruling, and that attorney Glass's compromise concession renders the motion moot.  On November 5, 2014, this court granted Jogani's motion in part, dismissing as nonappealable the portion of the appeal challenging the denial of the motion to preclude Glass from testifying at trial.

## Discussion

**A.      Appealability**

The trial court's denial of the defendants' motion for Glass's disqualification, and for an order barring him from having direct or indirect communications with Jogani and his trial counsel about the case, is appealable either as an order denying an injunction (Code Civ. Proc., § 904.1, subd. (a)(6)), or as a final order on a collateral matter unrelated to the merits of the underlying litigation.  (*Meehan v. Hopps* (1955) 45 Cal.2d 213; *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1052, fn. 1.)

The court's denial of the defendants' request for an order barring Glass from testifying at trial as a percipient witness is an interim evidentiary ruling, which can be modified at any time until entry of final judgment.  (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107.)  It has none of the attributes of a final judgment, a final order on a collateral matter, or any other category of order that is made appealable by Code of Civil Procedure section 904.1.  The appeal from it therefore must be dismissed (*Estate of Bartholomae* (1968) 261 Cal.App.2d 839), and nothing in this opinion is intended to intimate whether Glass can or should be precluded from testifying at trial as a percipient witness on Jogani's behalf.

---

[11] The filing of the appeal is shown by court records.  Appellant's appendix filed on Jogani's behalf (mislabeled as "Exhibits In Support Of Opening Brief") does not include the notice of appeal.  (See Cal. Rules of Court, rules 8.122(b)(1)(A) & 8.124(b)(1)(A) [appellant's appendix "must contain" copy of conformed notice of appeal].)

**B.     Standing and Mootness**

Respondent Jogani moved in this court to dismiss the appeal from the order denying Glass's disqualification, on two closely related grounds:  that the defendants lack standing to appeal the trial court's denial of the disqualification request, and that the appeal is moot.  The contention is that the defendants lack standing because the trial court's acceptance of Glass's offer to discontinue his consultations with Jogani and his trial counsel about the lawsuit provides the defendants with all the relief they would have gained from a disqualification order.  And Jogani argues that the defendants' appeal from the denial of the disqualification motion is moot, because Glass's disqualification is impossible as he is not now acting as Jogani's trial counsel.

We have granted dismissal of the appeal from the order denying the motion to bar Glass from testifying at trial; but we denied the motion to dismiss the appeal from the trial court's order denying the motion to disqualify Glass as Shashi's attorney.  We find that the defendants do not lack standing to appeal the order denying their motion for Glass's disqualification, and we find that the appeal is not moot.

### 1.  The defendants have standing to appeal from the order denying disqualification of attorney Glass.

The right to appeal in civil actions is wholly statutory.  (*Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 649.)  To exercise that right an appellant must have standing to appeal, and must take an appeal from a statutorily declared appealable judgment or order.  (*Ibid*.)  This rule is jurisdictional.  (*United Investors Life Ins. Co. v. Waddell & Reed, Inc*. (2005) 125 Cal.App.4th 1300, 1304.)

Appellate standing is governed by Code of Civil Procedure section 902, which provides that only those persons who are parties aggrieved by the appealed order or judgment have a right to pursue an appeal from it.  (*Eggert v. Pacific States Savings & Loan Co.* (1942) 20 Cal.2d 199, 200-201 [an appeal may be taken only by a "party aggrieved" by the appealed judgment or order]; *In re D.M.* (2012) 205 Cal.App.4th 283, 293-295; *In re Pacific Std. Life Ins. Co.* (1992) 9 Cal.App.4th 1197, 1200-1203.)  A party is aggrieved only if its "rights or interests are injuriously affected by the judgment."

11

(*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.)

Jogani argues that the defendants are not aggrieved by the trial court's order: "The order on appeal is tantamount to a disqualification order because it effectively grants Defendants the very relief they requested, *to wit*, it orders Attorney Glass to refrain from acting as counsel or communicating with Plaintiff or Plaintiff's counsel in connection with this case."

But the defendants were not granted the relief they requested. Their disqualification motion was denied; there is no order preventing Glass from counseling and assisting Jogani in his prosecution of this action against the defendants; and in denying the disqualification motion, the court declined to consider, or rule, on the question whether Glass's former representation of both Jogani and the defendants with respect to the transactions involved in their suit constitute grounds requiring his disqualification from assisting Jogani in his suit against the defendants.

Attorney Glass filed a response to the defendants' disqualification motion in the trial court. In his response, Glass expressly refused to concede any of the motion's factual assertions. He instead proposed that "he will not (a) assist, or (b) communicate with [Jogani] or his counsel in connection with the preparation of or trial of this action"—but only on the condition that there would be "no adverse factual or legal findings by the Court against Glass." That is, Glass told the court that he would voluntarily agree to some portion of what the defendants sought, but that he would do so only if the court made no determination that the defendants are entitled to his disqualification—only if the court would refrain from finding that Glass is or was guilty of the charged conflict of interest, or that he is or was disqualified from representing Jogani, by virtue of his (admitted) representation of the defendants with respect to the same events and transactions. In short, if—but only if—the court would refrain from finding that he had breached his professional and ethical duties to his clients, Glass would refrain from breaching those duties anymore. Or, as the appealing defendants put it, he told the court, "let bygones be bygones, trust me, I won't do it again."

12

The trial court denied the disqualification motion, purporting to accept Glass's "offer to refrain from acting as counsel [for] or communicating with" Jogani or his trial counsel in connection with the lawsuit.[12] But the court did not condition its denial of the motion on Glass's willingness to adhere to the terms of his offer, and nothing in the court's order bars Glass from changing his mind. The defendants are not aggrieved by the motion's denial, Jogani contends, because they "do not seriously argue that Attorney Glass would escape court sanction, were he to violate the court's order." But how could he violate the court's order, which denied any order binding Glass or Jogani? The court made no order barring Glass from serving as Jogani's attorney in this (or any other) case, or barring him from continuing to assist Jogani and his trial attorney in their preparation and prosecution of the lawsuit against the defendants (who were admittedly his clients with respect to transactions involved in this lawsuit). An order embodying the terms of Glass's informal assurances might have rendered those assurances enforceable, if they were later violated. (Code Civ. Proc., § 1209, subd. (a)(5) [contempt for violation of court order]; *Koehler v. Superior Court* (2010) 181 Cal.App.4th 1153, 1159 [party's disobedience of a judge's order is common example of contempt].) But here, there is simply no order.

The defendants therefore are aggrieved, and do not lack standing to appeal from the trial court's ruling.

## 2. The appeal is not moot.

An appeal ordinarily will be dismissed as moot if intervening events have made it impossible for the court to render effective relief to the appellant. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541; but see *In re William M.* (1970) 3 Cal.3d 16, 23 [court retains discretion to review moot issue on the merits where the appeal poses recurring issue of broad public interest].) We have

---

[12] Glass's response in the trial court did not actually say anything about not "acting as counsel" for Jogani, but only that he would no longer assist or communicate with Jogani or his counsel about the lawsuit's preparation or trial.

13

previously denied Jogani's motion to dismiss the appeal from the order denying Glass's disqualification, and we confirm that ruling here. The defendants' appeal is not moot.

Without an order disqualifying Glass from representing Jogani and barring his participation in the prosecution of the lawsuit against his former clients, nothing at all provides the court with the ability to enforce Glass's assurances, and nothing provides the defendants with any remedy in the event of a later change of mind by Glass. Glass's conditional offer to discontinue the challenged conduct does not justify the trial court's denial of the disqualification motion. "'It is settled that the voluntary discontinuance of alleged illegal practices does not remove the pending charges of illegality from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges where by the mere violation of a party the challenged practices may be resumed.'" (*Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 929.) This dispels the assertion that the court's acceptance of Glass's offer to discontinue his consultations with Jogani and his counsel about the lawsuit have provided the defendants with all they could have gained from the requested disqualification order.

**C.     Standards of Review**

The trial court's decision on a disqualification motion is reviewed for abuse of discretion. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) "When reviewing an order granting or denying a motion to disqualify, a reviewing court defers to the trial court's decision, absent an abuse of discretion." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1055.) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]' [Citation.] As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) The court's application of the law to the facts is reversible only if arbitrary and capricious. (*Ibid.*; *Fiduciary Trust Internat. of*

14

*California v. Superior Court* (2013) 218 Cal.App.4th 465, 481.) However, the court's discretion is also abused when it fails to exercise discretion in a situation where the exercise of its discretion is required. (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1055; *Gardner v. Superior Court* (1986) 182 Cal.App.3d 335, 338-339.)

**D.** **Glass's Conditional Assurance That He Would End His Consultations With Jogani's Trial Counsel Did Not Render The Disqualification Motion Moot.**

The trial court denied the request for Glass's disqualification based on Glass's representation to the court that he would discontinue his ongoing consultation with and assistance to Jogani's trial counsel with respect to the issues in the lawsuit, if the court were to make no factual or legal findings adverse to him. That is, Glass told the court that he would agree to two of the conditions sought by the motion, but only if the court would refrain from ruling that Glass's conduct constituted a conflict of interest, that Glass is or was disqualified from representing Jogani, and that Glass is or was in breach of duties owed to the parties. In short, Glass said he would not breach his duties anymore, if the court would not determine that he ever had. Or, as the appealing defendants put it, he asked the court to "let bygones be bygones, trust me, I won't do it again"—but only if court made no order that he could not continue to represent Jogani.

In section E of this opinion, below, we conclude that the grounds stated in the defendants' motion require Glass's disqualification. The trial court therefore abused its discretion by denying the motion for an order that Glass is disqualified from representing Jogani and from assisting Jogani and his attorney in their prosecution of the lawsuit against the defendants.

The record reflects no basis on which the court could have determined that a disqualification order was not justified, or that its denial of such an order would be adequate to protect the defendants' right to prevent Glass from advising and assisting Jogani in his prosecution of the suit against them. Glass had long acted as counsel for Jogani with respect to the issues raised by the lawsuit, both during his representation of

15

the defendants and after his discharge by them. Jogani's trial attorney had affirmed that Glass had been assisting in the prosecution of the lawsuit against the defendants, and had stated his intention that Glass would have access to documents covered by an anticipated protective order, and would continue to "utilize his skill and knowledge in preparing for and trying this case."

Although the court apparently believed that Glass's response to the motion constituted a promise to discontinue his activities on Jogani's behalf, Glass in fact had made no promise, and nothing in the record shows that Glass had actually ceased assisting Jogani in his lawsuit against his former clients. Instead, Glass had represented that only if the court were to make no rulings implying findings adverse to him on the disqualification issue—in other words, only if the court were to deny the motion—he would thereafter voluntarily refrain from continuing to engage in the conduct justifying his disqualification.

Glass's conditional offer to voluntarily end his assistance to Jogani did not remove the charges of conflict of interest and disqualification "'from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges where by the mere violation of a party the challenged practices may be resumed.'" (*Marin County Bd. of Realtors, Inc. v. Palsson*, *supra*, 16 Cal.3d at p. 929.) "It is also well established that an appeal is not rendered moot where the parties raise substantial questions of public interest that are likely to recur." (*United Farm Workers v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1164.)

Notwithstanding the court's purported acceptance of Glass's conditional offer of compromise, its denial of the disqualification motion actually rendered Glass's offer unenforceable. The motion's denial left nothing at all preventing Glass from continuing to act as Jogani's attorney and advisor with respect to matters involved in his lawsuit and Glass's former representation of the defendants. If he were to do so, the defendants apparently would be back to square one; their only recourse would be to renew their disqualification request, on the same grounds—grounds that support the requested relief, as we determine below. A breach of Glass's offer to refrain from further assistance to

16

Jogani, without a court order, would provide them with no basis for relief. (See *In re Wren* (1957) 48 Cal.2d 159, 163-164 [without lawful order, court has no basis on which to find contempt]; *In re Hagan* (1964) 224 Cal.App.2d 590, 594 [no contempt in absence of order].) The trial court's denial of the disqualification motion is not rendered moot by its acceptance of Glass's offer.

## E.     Rules Governing Attorney Disqualification

Rule 3-310 of the Rules of Professional Conduct[13] requires that attorneys avoid representing clients with conflicting interests (at least without the clients' informed written consent).[14] Rule 3-310(C) deals with concurrent representation of clients with conflicting interests, providing that an attorney "shall not . . .: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." Rule 3-310(E) deals with conflicting representations that might be either concurrent or successive: "A member shall not . . . accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

The distinctions between concurrent and successive representations are frequently important, because the values at stake for each are not the same and the disqualification standards that apply to each therefore are different. In cases of successive representation, "'the chief fiduciary value jeopardized is that of client *confidentiality*'"—the former

---

[13] References to professional rules are to the Rules of Professional Conduct of the State Bar of California, unless otherwise specified.

[14] Because no issue in this appeal involves written consent, we omit the quoted rules' requirements for the clients' written consent to conflicting representations. (See rule 3-310(A)(2).)

client's right to rely on the confidentiality of communications with his or her former counsel. The rule in such cases is that disqualification of the attorney is required, but only if there is "'a "substantial relationship"'" between the former and the current representations, which gives rise to a presumption that confidential communications passed between them. (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 161, quoting *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283.)

But the values at stake, and the standards for attorney disqualification, are different when there has been a concurrent representation of clients with conflicting interests. "In simultaneous representation cases, '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.'" (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 160, quoting *Flatt v. Superior Court*, *supra*, 9 Cal.4th at p. 284.) The ethical duty not to disclose client confidences and the attorney-client evidentiary privilege both arise from the law's need to encourage clients to disclose to their attorneys all pertinent information, and the concomitant need to protect that disclosure. But the duty not to represent conflicting interests arises not just from the need for confidentiality of attorney-client communications, but also from the fiduciary nature of the attorney-client relationship itself. Clients repose confidence in their attorneys beyond merely engaging in confidential communications; they also rely on their attorney's continuing loyalty to their cause.

The rule against concurrent representation of conflicting interests therefore rests on both of these factors. Because conflicts threatening the duty of loyalty are so serious—and because the rules protecting attorney-client communications do not protect against violations of the duty of loyalty—"'[w]ith few exceptions, disqualification [in a case of simultaneous representation] follows automatically,'" without any showing that the client's confidential communications are at risk. (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 160, quoting *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1147.) "The principle precluding representing an interest adverse to those of a current client is based not on any concern with the

18

confidential relationship between attorney and client but rather on the need to assure the attorney's undivided loyalty and commitment to the client." (*Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 78, fn. 1.) "'[R]epresentation adverse to a *present* client must be measured . . . against the duty of undivided loyalty which an attorney owes to each of his clients.' [Citations.] If this duty of undivided loyalty is violated, 'public confidence in the legal profession and the judicial process' is undermined." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at pp. 1056-1057.) In cases of concurrent representation, the moving party need not show a disclosure of confidential information; "in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." (*In re Flatt*, *supra*, 9 Cal.4th at p. 284.)[15]

**F.     Glass Is Disqualified From Representing Jogani In His Case Against The Defendants.**

Here, the record shows both concurrent and successive conflicting representations by Glass. Concurrent representations typically occur when an attorney representing one client is also engaged to represent a second client, in the same or in another matter, whose interests are adverse to those of the first client. But a conflicting concurrent representation also arises when an attorney represents clients who are acting jointly with respect to a single matter, but the clients' interests in the matter later diverge. In such a case, what began as a concurrent conflicting representation (when the clients' interests initially diverged) becomes a successive representation of conflicting interests if the attorney then withdraws or is discharged from representation of one of the clients, but continues to represent the other in an action against the first.

---

[15] "In cases involving the representation of a client against a former client, 'the initial question is "whether the former representation is 'substantially related' to the current representation."'" "If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship. Thus, actual possession of confidential information need not be proven when seeking an order of disqualification." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1056; *Civil Service Com. v. Superior Court*, *supra*, 163 Cal.App.3d at pp. 79-80.)

19

That's what happened here.  For about six years Glass represented both Jogani and the defendants with respect to their joint operation of the real estate investment enterprise, during which period neither Glass nor the parties perceived any actual conflict of interest.  Then, after the conflict between the parties became apparent, Glass tried for at least a brief period to continue acting on behalf of both Jogani and the defendants, and apparently even to mediate their disputed rights with respect to their interests in the real estate enterprise.  During that period he was concurrently representing clients with conflicting interests, prohibited by rule 3-310(C) without regard to whether his representation threatened client confidences.  (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 160.)  And when he was discharged by the defendants, but continued to represent Jogani—including assisting him and his trial counsel to prosecute this lawsuit against his former clients—his disqualification was mandatory for that reason as well.  (*Id*. at p. 161 [disqualification required for successive representation of conflicting interests where there is substantial relationship between subjects of former and current representations].)

Even in cases involving only successive representations, determining whether disqualification is required involves more than just protecting the parties' interests with respect to disclosure of protected confidential communications.  (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at pp. 1056-1057.)  As our Supreme Court has reiterated, the applicable rules arise not only in order to protect the confidentiality of privileged communications, but also to protect and preserve the essential public trust in the administration of justice and the integrity of the bar.  (*In re Charlisse*, *supra*, 45 Cal.4th at p. 159; *People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1145.)  "'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with

20

a judicial proceeding before it, in every matter pertaining thereto.'''" (*In re Charlisse*, *supra*, 45 Cal.4th at p. 159.)[16]

Glass has admitted that he concurrently represented both Jogani and the defendants in the operation of their real estate enterprise from at least April 1995, until his representation of the defendants ended sometime after December 2001—the time at which he concedes that his clients' conflicts of interest had become actual and apparent. His representation of Jogani and the defendants therefore reflects elements of both concurrent and successive conflicting representations: He concurrently represented clients with conflicting interests—and made some attempt to mediate their conflicts—at least during the period from late 2001 until his actual discharge by the defendants; and when he was discharged by the defendants sometime after the parties' conflicts of interest had become apparent in late 2001, Glass continued his representation of and assistance to Jogani in his prosecution of this lawsuit against the defendants.

Glass's disqualification from representing either party against the other therefore is required, without regard to whether his conflicting representations are considered to be successive, or concurrent, for two reasons.[17] First, his disqualification is required even if the conflicting representations are considered to be only successive, not concurrent, because of the identity of the matters as to which he had represented both parties. (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 161 [disqualification is required where there is a "substantial relationship" between the subjects of the former and current

---

[16] "'"It has long been established in civil cases that the court has the power . . . to disqualify an opposing attorney from participating in a trial when, for example, the attorney improperly seeks to proceed against a former client. [Citations.]" [Citations.] Although there may be greater reason for disqualifying an attorney in a conflict of interest case, the court nevertheless has authority to disqualify in any instance when, as here, the court reasonably deems it necessary to ". . . control in furtherance of justice, the conduct of its ministerial officers . . . ." (Code Civ. Proc., § 128; [citation].)'" (*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 605.)

[17] Glass's representation of Jogani may be viewed either as concurrent with his representation of the defendants (as it was for a time), or successive to his representation of the defendants (as it became after his discharge by the defendants).

21

representations].)[18] Second, the fact that Glass's concurrent representation of his clients with conflicting interests ended long ago (and his conflicting representation became successive), does not affect the mandatory disqualification requirement. "[A] law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1057; see *Unified Sewerage Agency, etc. v. Jelco Inc.* (9th Cir. 1981) 646 F.2d 1339, 1345, fn. 4 [disqualification requirement "continues even though the representation ceases prior to filing of the motion to disqualify. If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client"]; *Picker International, Inc. v. Varian Associates, Inc.* (N.D.Ohio 1987) 670 F.Supp. 1363, 1366, affd. 869 F.2d 578 (Fed.Cir. 1989) [attorney owes client duty of undivided loyalty, even though firm may cease representing client before disqualification motion]; *Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.* (S.D.Fla. 1987) 655 F.Supp. 419, 422 [disqualification is required, because "Public confidence in lawyers and the legal system must necessarily be undermined when a lawyer suddenly abandons one client in favor of another"]; *Margulies v. Upchurch* (Utah 1985) 696 P.2d 1195, 1203 [right to disqualification is judged by standards applicable at the time of the concurrent representation, even after attorney no longer represents both clients].)

The requirement of disqualification in this case is not negated by the possibility that some or all of the communications during the parties' years-long joint representation

---

[18] Jogani and Glass contended that Glass should not be disqualified because his representation of the parties involved only his confirmation of Haresh's record ownership of the entity defendants (contrary to lenders' and creditors' claims that Jogani owned some share). But their contention that this is unrelated to the current lawsuit is not consistent with Jogani's contention that Glass's testimony on Jogani's behalf will be "directly relevant to the claims in this action." The lawsuit is about whether Jogani does or does not share in the assets about which Glass made ownership representations to others. The relevance of Glass's testimony in this action will be for the trial court to determine.

by Glass might be unprotected under the joint-client exception or other evidentiary rules applicable to the attorney-client privilege (Evid. Code, § 962).[19] The law's concern with concurrent representations of clients with conflicting interests is not limited to disclosure of client confidences. (*Fiduciary Trust v. Superior Court*, *supra*, 218 Cal.App.4th at pp. 482-486 & fn. 5 [joint representation and waiver of attorney-client privilege do not excuse the court's obligation to order disqualification].) "The California Supreme Court has . . . repeatedly held that the disqualification rules are not merely intended to protect client confidences or other 'interests of the parties'; rather, '[t]he paramount concern . . . [is] to preserve public trust in the scrupulous administration of justice and the integrity of the bar.' [Citation.] In light of these significant public interests, we do not agree that matters of disqualification should be determined solely by reference to evidentiary rules." (*Id.* at pp. 485-486; *Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 762 [attorney-client privilege is based only on duty not to disclose confidential communications; conflict-of-interest rules are based also on fiduciary duty of loyalty].) The application of the attorney-client privilege is not controlling with respect to the issue of attorney disqualification. (*Fiduciary Trust v. Superior Court*, *supra*, 218 Cal.App.4th at p. 486, fn. 5.)[20]

---

[19] Evidence Code section 962 provides: "Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

[20] In *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, the court explained why confidentiality of communications is not the only important factor. There, a judicial settlement officer had retired and joined the firm that represented the litigant's opposition. No matter how careful the former settlement officer's insulation from the litigation, the court explained, "No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent." (*Id*. at p. 125.) The same rule applies when the mediation is conducted by attorneys rather than judges. (*Castaneda v. Superior Court* (June 24, 2015, B259950).)

23

## Conclusion

Glass represented both Jogani and the defendants for many years in many transactions and appearances that may well have important and perhaps decisive implications for the disputes raised by their current lawsuit. His current appearance continuing assistance to Jogani and his counsel in their prosecution of the lawsuit against his former clients, involving transactions with respect to which he represented both parties, can only appear unseemly at best, without regard to whether their communications were confidential as between the parties, and without regard to whether they are or are not protected from disclosure in the trial of this case.[21]

Because the undisputed circumstances require Glass's disqualification from advising Jogani as his attorney or assisting him with respect to the matters with respect to which he formerly represented the defendants, the trial court's denial of the disqualification motion was an abuse of discretion. The defendants are entitled to an order that Glass is disqualified from representing and assisting Jogani in the prosecution of his lawsuit against the defendants.

## Disposition

The request for judicial notice is denied. The appeal from the trial court's denial of an order barring attorney Steven Glass from testifying as a witness at trial is dismissed. The order denying the motion for Glass's disqualification to act as an attorney and advisor to Shashikant Jogani with respect to the lawsuit against the defendants is reversed. The trial court is directed to grant the disqualification motion in a manner consistent with this opinion and the record in this case.

---

[21] Because our decision is not dependent on the extent to which the parties' communications may or may not be confidential or privilege, or whether any possible objections to Glass's testimony may or may not have been waived, we deny Jogani's January 23, 2015 request for judicial notice of documents purportedly relevant to that issue.

24

The defendants are entitled to their costs on appeal.

NOT TO BE PUBLISHED.


                                        CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        MOOR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.